UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| ARMETTA BULLARD, | : | Case No. 3:19-cv-13 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

## I. Introduction

Plaintiff Armetta Bullard brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She applied for benefits on July 17, 2015, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Deborah F. Sanders concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Sanders's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since May 9, 2009. When she filed her application, she was forty-four years old and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). She has a high school education. *See id.* § 416.964(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 60-79), Plaintiff's Statement of Errors (Doc. #7), and the Commissioner's Memorandum in Opposition (Doc. #11). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Sanders to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since July 17, 2015.

Step 2: She has the severe impairments of left should osteoarthritis, degenerative disc disease of the lumbar spine with radiculopathy, recurrent umbilical hernia, migraine headaches, anxiety, and depression.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … subject to the following limitations: (1) lifting up to 10 pounds frequently; (2) standing/walking up to 2 hours in an 8-hour workday; (3) sitting up to 6 hours in an 8-hour workday; (4) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching; (5) never climbing ladder, ropes, or scaffolds, or crawling; (6) frequent bilateral overhead reaching, and handling and fingering (gross and fine manipulation); (7) avoiding concentrated exposure to extreme cold, extreme heat, humidity, and irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; (8) carrying out simple, routine, repetitive tasks but not at a production rate pace; (9) no strict production quotas; (10) performing tasks that require no greater than 2 hour blocks of time; (11) no interaction with the public in a customer service capacity; (12) may be absent 8-10 days per year; (13) off-task approximately 5% per day."

Step 4:   She is unable to perform any of her past relevant work.

Step 5:   She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 60-79). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 78.

V. **Discussion**

Plaintiff contends that the ALJ's Step-Three finding is not supported by substantial evidence for two reasons: (1) the ALJ erred in finding that her mental impairments did not meet the requirements for disability as set forth by Listings 12.04 and 12.06; and (2) the ALJ failed to sufficiently explain why Plaintiff did not meet those Listings.

At Step Three, "If a claimant's impairments meet or equal a listed condition, the ALJ must find him disabled." *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013) (citations omitted); 20 C.F.R. § 416.920(a)(4)(iii). The claimant bears the burden of demonstrating that she meets or equals a listed impairment. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "If … the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Sheeks*, 544 F. App'x at 641 (quoting *Abbott v. Sullivan,* 905 F.2d 918, 925 (6th Cir. 1990)). An ALJ is not, however, required to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Id.*

5

To meet Listing 12.04 (depressive, bipolar, and related disorders) and/or Listing 12.06 (anxiety and obsessive-compulsive disorders), a claimant must show that she meets the criteria in both Paragraphs A and B or in both Paragraphs A and C. The Paragraph A criteria consist of clinical findings which medically substantiate a mental disorder; the Paragraph B criteria include impairment-related limitations; and the Paragraph C criteria involve additional functional criteria. In the present case, the Paragraph B criteria are at issue. To satisfy the Paragraph B criteria, a claimant must show that her mental impairment results in one extreme limitation or two marked limitations of the following areas of mental functioning: (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; and (4) Adapt or manage oneself. Listings 12.04B and 12.06B, 20 C.F.R. pt. 404, Subpt. P, App. 1.

At Step Three, after discussing Plaintiff's physical impairments, the ALJ concluded that Plaintiff's mental impairments do not meet or medically equal the criteria of Listings 12.04 and 12.06. (Doc. #6, *PageID* #s 71-72). Specifically, she found that Plaintiff's mental impairments do not meet the Paragraph B criteria:

> [I]n understanding, remembering, or applying information, the claimant has a mild limitation. In interacting with others, the claimant has a moderate limitation. With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. As for adapting or managing oneself, the claimant has experienced a mild limitation.

*Id.* at 71.[1]

---

[1] Further, the ALJ indicated that she considered whether Plaintiff's impairments met the paragraph C criteria and concluded they did not. (Doc. #6, *PageID* #71).

Although the ALJ's Step Three findings initially appear conclusory, the ALJ provided a significantly more detailed analysis earlier in her decision. As it relates to Plaintiff's ability to concentrate, persist, and maintain pace, the ALJ recognized that in Plaintiff's function report, she indicated that she can follow written instructions "pretty good" if they are repeated several times. Further, she takes medication to help her pay attention but it only helps for a certain period of time. *Id.* at 69-70 (citing Doc. #6, *PageID* #381).

The ALJ also discussed the opinion of evaluating psychologist Mark A. McClain, Ph.D. Dr. McClain opined that Plaintiff's attention was "poor to adequate." *Id.* at 802. She needed "redirection in order to obtain attention to questions and tasks." *Id.* Dr. McClain noted that Plaintiff's general level of intelligence was estimated to be in the average range and there was no suggestion of a cognitive impairment.

Moreover, the ALJ discussed the opinion of examining psychologist James Gilchrist, Ph.D. (at several points in her decision). Dr. Gilchrist administered a battery of neuropsychological measures and conducted a clinical interview and a lengthy interview/review session in January and February 2017. He opined,

> The pattern of test results at this time is most significant for a high degree of psychological stress comprised of both symptoms of depression and anxiety. The current level of psychological symptoms endorsed would result insignificant cognitive inefficiency. Individuals with this profile would have extreme difficulty in terms of maintaining attention and concentration. They are likely to be quite distractible.

*Id.* at 1007. Additionally, Dr. Gilchrist indicated that "Performance on measures which did require sustained attention and concentration were not noted to be uniformly below average for her age." *Id.* at 1008. For example, "she performed above average on a test of verbal fluency which is often quite difficult for individuals who have attention deficit disorder." *Id.* Similarly, her performance on memory measures was inconsistent and "would not be indicative of clinical memory impairment." *Id.* Dr. Gilchrist noted that he explained to Plaintiff that "her current level of psychological symptoms would result in difficulty with sustained attention and concentration and an increase in distractibility in terms of day to day functioning and therefore could mimic symptoms of attention deficit disorder." *Id.*

The ALJ assigned Dr. Gilchrist's opinion "great weight" because,

> Although Dr. Gilchrist's assessment does not include specific function-by-function limitations, his opinion with respect to the claimant's cognitive functioning is consistent with the balance of the record – the claimant's high degree of psychological stress comprised of depression and anxiety is likely to cause distraction and difficulty in maintaining attention and concentration but would not be indicative of clinical memory impairment.

*Id.* at 67.

The opinions of both record-reviewing psychological consultants, Blythe Farish-Ferrer[2] and Craig Horn, Ph.D., support and are consistent with the ALJ's findings. For instance, they found that Plaintiff has a moderate limitation in her ability to maintain concentration, persistence, and pace. *Id.* at 68, 168, 190. More specifically, they opined

---

[2] There are no credentials noted.

8

that Plaintiff "would be expected to have difficulty understanding, remembering, and carrying out detailed instructions." *Id.* at 173, 198. However, "[s]he is capable of performing simple tasks for at least two hour periods of time." *Id.* "She is expected to have difficulty working in close proximity or coordination with co-workers." *Id.* She assigned their opinions "some weight" because the consultants did not have the benefit of reviewing evidence submitted at the hearing level.

Plaintiff asserts that her mental impairments meet the paragraph B criteria. "The unequivocal evidence in this case shows that [she] was suffering from an 'extreme' limitation in the area of maintaining concentration, persistence, or pace." (Doc. #7, *PageID* #1551). She relies on the neuropsychological evaluation of Dr. Gilchrist. Although Plaintiff agrees with the ALJ that Dr. Gilchrist's opinion is entitled to "great weight," she explains that she "is at a loss as to how the ALJ determined that the findings on the part of Dr. Gilchrist are 'consistent with the balance of the record,' especially as it related to her problems with concentration, but simultaneously determined that the severity of Plaintiff's limitations described were unworthy of adoption." *Id.* at 1551-52.

Plaintiff's argument focuses primarily on Dr. Gilchrist's opinion she "would have *extreme* difficulty in terms of maintaining attention and concentration." (Doc. #6, *PageID* #1007) (emphasis added). She also points to Dr. Gilchrist's opinion that "Performance on measures which did require sustained attention and concentration were *not* noted to be uniformly below average for her age." *Id.* at 1008 (emphasis added). However, this opinion does not support Plaintiff's argument because she appears to have overlooked the word "not."

9

And Plaintiff's reliance on the word "extreme" is misplaced. As the Commissioner correctly points out, Dr. Gilchrist did not define "extreme," and there is no indication that he used the definition set forth in the Regulations. Plaintiff's treating physician referred her to Dr. Gilchrist (when she sought medication for attention deficit disorder) to "determine if her current cognitive profile is indeed consistent with attention deficit disorder." *Id.* at 1005. Thus, he evaluated Plaintiff for treatment—not disability. Further, Dr. Gilchrist does not, in fact, opine that Plaintiff has extreme difficulties. Instead, he says, "Individuals with this profile would have extreme difficulty in terms of maintaining attention and concentration." *Id.* at 1007. And, while Dr. Gilchrist used the word "extreme" once, when indicating what he discussed with Plaintiff, he omits the term—"her current level of psychological symptoms would result in difficulty with sustained attention and concentration …." *Id.* at 1008.

Furthermore, as explained in more detail above, substantial evidence supports the ALJ's conclusion that Plaintiff has a moderate limitation in her ability to concentrate, persist, and maintain pace. Accordingly, Plaintiff's arguments lack merit.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

Date: March 19, 2020  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge